IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**BENNIE SHOUGH,**                                  Case No. 3:16 CV 53

    Plaintiff,

    v.                                  Magistrate Judge James R. Knepp, II

**MANAGEMENT &TRAINING CORP.,**
**et al.,**

    Defendants.                         MEMORANDUM OPINION AND ORDER


## INTRODUCTION

On January 10, 2016, Plaintiff Bennie Shough ("Plaintiff") filed a Complaint against

Defendants Management & Training Corp., MTC Medical, LLC, Correctional Officer Skidmore,

and John Does 1-4 ("Defendants"). (Doc. 1). On March 26, 2016, Plaintiff moved to amend the

complaint (Doc. 5-1 at 1-14),[1] which the Court marginally granted (Doc. 7). In the Amended

Complaint, Plaintiff alleges five counts, pursuant to 42 U.S.C. § 1983: (1) inadequate policies,

procedures, and training; (2) Eighth Amendment violations; (3) Fourteenth Amendment

violations; (4) negligence; and (5) punitive damages.[2] *Id.* Defendants filed an Answer. (Doc. 8).

Jurisdiction is proper under 28 U.S.C. § 1331. The parties consented to the undersigned's exercise

of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 12). Pending before

---

1. A duplicate copy of the Complaint is found at Doc. 5-1, at 15-27. For clarity, the Court will cite only to the first copy at Doc. 5-1, 1-14.
2. At the outset, the Court notes punitive damages is not a separate claim. *See Smith v. Wade*, 461 U.S. 30, 52 (1983) (punitive damages are available in an action brought under § 1983 "[i]f the plaintiff proves sufficiently serious misconduct on the defendant's part . . .". (internal quotation omitted)).

the Court is Defendants' Motion for Summary Judgment (Doc. 27), to which Plaintiff filed opposition (Doc. 35), and Defendants filed a reply (Doc. 41). Also before the Court are: (1) Plaintiff's motion to strike the affidavit of Dr. Wilson and for sanctions (Doc. 33), Defendants' response (Doc. 40) and notice of filing of original notarized affidavit (Doc. 42), and Plaintiff's reply (Doc. 43); (2) Plaintiff's unopposed motion to strike the affidavit of Warden Turner (Doc. 37); (3) Plaintiff's unopposed motion to supplement the record with his notarized affidavit (Doc. 38); and (4) Plaintiff's motion to strike hearsay statements (Doc. 39), and Defendants' opposition thereto(Doc. 44). For the reasons stated below, Defendants' motion for summary judgment is granted in its entirety and the case is dismissed with prejudice.[3]

## BACKGROUND[4]

This case arises out of an incident on January 20, 2014,[5] at the North Central Correctional Complex ("NCCC"), the institution at which Plaintiff was then incarcerated. (Amended Complaint, Doc. 5-1, at 4 & Plaintiff's Affidavit, Doc. 38-1, at 1). Plaintiff suffered a right shoulder injury "from an altercation by another inmate and while being physically restrained and forced to the ground by Correctional Officer Sgt. Skidmore." (Amended Complaint, Doc. 5-1, at 4).[6] Officer McCurry intervened into a verbal altercation between Plaintiff and another inmate by

---

3. Plaintiff's pending motions will be discussed within.
4. The Court hereby grants Plaintiff's unopposed Motion to Supplement the Record with a notarized affidavit (Doc. 38) and considers the factual allegations therein. Plaintiff originally filed a signed but non-notarized affidavit with his opposition to Defendants' Motion for Summary Judgment. *See* Doc. 35-1, at 1-5. Allegations in the Amended Complaint are, at times, seemingly inconsistent with the allegations in the Affidavit. The Court hereby considers the allegations in both the Amended Complaint and the Affidavit, and to the extent they are inconsistent, in the light most favorable to Plaintiff.
5. In the Amended Complaint, Plaintiff also alleged constitutional violations from a September 2013 incident (Doc. 5-1, at 3-4), but retracted that claim in his brief (Doc. 35, at 17).
6. In his Affidavit, Plaintiff asserts it was Lieutenant. R. McCurry, rather than Officer Sergeant Skidmore, who responded to the altercation between Plaintiff and another inmate. (Doc. 35-1, at 1-2). This is supported by the incident report, Plaintiff's handwritten notes, conduct reports, a use

placing Plaintiff into handcuffs. (Plaintiff's Affidavit, Doc. 38-1, at 1-2). Officer McCurry shoved Plaintiff into walls as he moved him away from the altercation. *Id.* at 2. At some point during transport, Plaintiff "squared up and planted [his] feet in order to stop officer McMurray [sic] from shoving and pushing [him] into the wall." (Plaintiff's Affidavit, Doc. 38-1, at 2). Officer McCurry then "grabbed [Plaintiff] by the handcuffs and forcefully slammed [Plaintiff] to the ground causing [his] entire body weight to fall on [his] right shoulder." *Id.* Plaintiff felt a sharp pain in his right shoulder and "[his] shoulder became dislocated and came out of [sic] socket." *Id.*; *see also* (Amended Complaint, Doc. 5-1, at 4).

Officer McCurry and an unknown correctional officer took Plaintiff for medical treatment before taking him to segregation.[7] (Plaintiff's Affidavit, Doc. 38-1, at 2). Plaintiff complained of right shoulder and left thumb injuries. (Doc. 36-1, at 3). A registered nurse examined him and listed the objective physical findings, including a small abrasion inside the right elbow, and assessed: had no signs of symptoms of shortness of breath. *Id.* Plaintiff was released to segregation. *Id.* A progress note, also dated January 20, 2014, indicates Plaintiff was prescribed ibuprofen. (Doc. 36-1, at 6).

From the date of the incident, to Plaintiff's transfer to another facility on March 26, 2014, he was housed in a segregation unit. (Amended Complaint, Doc. 38-1, at 2-3). While in segregation, Plaintiff verbally complained to correctional officers that his shoulder was out of the socket. (Plaintiff's Affidavit, Doc. 38-1, at 2). Two days after the incident, on January 22, 2014,

---

of force committee report and findings, and informal complaint resolution report. (Doc. 27-3, at 3-14). Additionally, Plaintiff admits in his brief, Officer Skidmore had "no personal knowledge of the incident". (Doc. 35, at 21).

7. Plaintiff asserts he was taken to solitary confinement without receiving any medical treatment. (Plaintiff's Affidavit, Doc. 38-1, at 2). Prison records contradict this. *See* Doc. 36-1, at 3, 6. For his part, in his brief, Plaintiff concedes: "there was a brief medical check of Plaintiff before being taken to segregation . . .", but adds that he does not recall it. (Doc. 35, at 4).

Plaintiff submitted a Health Services Request, seeking treatment for his shoulder. (Plaintiff's Affidavit, Doc. 38-1, at 2 & Doc. 36-1, at 1). The following day, he was evaluated by Dr. Stein, given ibuprofen for pain, referred for x-rays, and returned to segregation. (Plaintiff's Affidavit, Doc. 38-1, at 2 & Doc. 36-1, at 5).

On January 27, 2014, Plaintiff had x-rays taken of his right shoulder. (Plaintiff's Affidavit, Doc. 38-1, at 3 & Doc. 36-1, at 7). Guillermo Zaldivar, M.D., interpreted the results and his impression was: (1) "[n]o acute changes noted"; (2) "[s]econd to third degree acromioclavicular separation" (3) "[m]ost likely remote, well-healed fracture at distal clavicle"; (4) "[p]ossible remote posterior shoulder dislocation"; and (5) "[t]he acromioclavicular joint appears otherwise unremarkable". (Doc. 36-1, at 7).[8] Plaintiff completed another Health Services Request, received on February 5, 2014, seeking treatment for his right shoulder. (Doc. 36-1, at 2), and he received various treatment for shoulder pain in February and March 2014 (Doc. 36-1, at 5-6, 8-11, 14-15).[9]

At NCCC, Plaintiff received "minimal medical care"[10] consisting of ibuprofen and Excedrin for his shoulder injury. (Plaintiff's Affidavit, Doc. 38-1, at 3-4 & Amended Complaint, Doc. 5-1, at 5). When he was transferred to Mansfield Correctional Institution, he received treatment for his shoulder that consisted of a sling, Kenalog injections, Flexeril, muscle relaxers, and shoulder exercises. (Plaintiff's Affidavit, Doc. 38-1, at 3-4); *see generally* Doc. 36-2 (medical records from Mansfield Correctional Institution). As of the date his Affidavit was filed, Plaintiff

---

8. Plaintiff suffered a "fracture to [his] collar bone" when he was a child, "but it healed and [he] never had any problem or injury to my right shoulder." (Plaintiff's Affidavit, Doc. 38-1, at 1).
9. Plaintiff was also seen by medical staff for other ailments. *See* Doc. 36-1, at 8-10, 12-15).
10. In the very next paragraph, however, Plaintiff asserts "I did not receive *any* medical care while at NCCC, my requests for treatment were ignored and I was transferred to [Mansfield Correctional Institution] without *any* treatment to help my separated shoulder." (Plaintiff's Affidavit, Doc. 38-1, at 4) (emphasis added).

still experienced shoulder pain and instances in which his shoulder would dislocate or "pop" out of the socket. (Plaintiff's Affidavit, Doc. 38-1, at 4).

### PLAINTIFF'S PENDING MOTIONS

<u>Motion to Strike Dr. Wilson's Affidavit and for Sanctions</u>

Plaintiff filed a motion to strike the affidavit of Dr. Wilson, alleging she is an undisclosed medical expert, and requests sanctions against Defendants and counsel. (Doc. 33). Defendants admit the "oversight", but argues it poses no prejudice to Plaintiff and, because of Plaintiff's repeated failure to cooperate with discovery and failure to provide expert support for his claims, the Court should nonetheless consider the affidavit because it would assist the Court. (Doc. 40).[11] Defendants also argue sanctions are not appropriate in this case. *Id.*

On May 11, 2017, following a telephonic status conference, the Court issued a scheduling order requiring Plaintiff's expert reports be filed on or before June 3, 2017, and Defendants' experts reports by July 24, 2017. (Doc. 26); *see also* Fed. R. Civ. P. 26(a)(2) and (e)(2). Neither party filed an expert report by the imposed deadlines or requested additional time to do so.

---

11. In his Reply, Plaintiff argues Defendants' response should be stricken from the record because it was filed a day after the deadline. *See* Local Rule 7.1(d) (allowing 14 days for a reply). Because district courts have wide discretion in deciding whether to allow late filings under Civil Rule 6, and to fully understand the issues presented, the Court will consider Defendants' untimely response. *See Alternate Travel, Inc. v. Worldspan L.P.*, 52 F. App'x 693, 698-99 (6th Cir. 2002) (considering motions filed a day late). In *Alternate Travel*, the court noted:

> The district court has wide discretion in these matters. The Second Circuit has stated that "mere inadvertence, without more, can in some circumstances be enough to constitute 'excusable neglect' justifying relief under Rule 6(b)(2)." *Raymond v. Int'l Bus. Machs. Corp.*, 148 F.3d 63, 66 (2nd Cir.1998). The Fifth Circuit has emphasized that the district court is to be granted broad discretion to expand the filing deadline. *See Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 367 (5th Cir.1995) (finding that the district court's acceptance of a motion one day late was "perfectly reasonable").

*Id.*

Defendants filed the motion for summary judgment on August 28, 2017, with Dr. Wilson's affidavit attached, identifying her as a medical expert.

Rule 56 of the Federal Rules of Civil Procedure in relevant part states:

> (h) AFFIDAVIT OR DECLARATION SUBMITTED IN BAD FAITH
> If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court—after notice and a reasonable time to respond—may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

Fed. R. Civ. P. 56(h).

The Court has the ability to enforce pretrial scheduling orders through Civil Rule 37, Failure to Disclose or Supplement. That rule states, in its entirety:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> > (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> > (B) may inform the jury of the party's failure; and
> > (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37.

Defendants do not alleged the failure to identify Dr. Wilson was substantially justified, rather admitted it was simply an "oversight". (Doc. 40, at 1). Plaintiff alleges prejudice from this failure, however, "[h]armlessness . . . is the key under Rule 37, not prejudice. The advisory committee's note to Rule 37(c) 'strongly suggests that 'harmless' involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party.'" *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003) (citing *Vance v. United States*, 182 F.3d 920, 1999 WL 455435, at *5 (6th Cir. 1999) (unpublished table decision)). Here, Defendants allege an honest

mistake in failing to disclose Dr. Wilson, however, Plaintiff had no prior knowledge of her testimony and no opportunity to cross examine her. The failure to disclose her, therefore, was not harmless. The Court grants Plaintiff's Motion to Strike Dr. Wilson's affidavit. (Doc. 33), and now turns to address whether sanctions are appropriate in this case.

*Request for Sanctions*

Plaintiff contends sanctions against both Defendants and defense counsel are appropriate for the willful violation of Civil Rules 26, 37, and 56. (Doc. 33, at 5-6). Defendants respond Plaintiff's request for sanctions is "disingenuous at best" due to his failure to respond to discovery throughout the case—providing examples of such. (Doc. 40, at 5-7).[12]

The decision to impose or not impose sanctions is within this Court's discretion. *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 510 (6th Cir. 2002); *see also* Fed. R. Civ. P. 11(b)(1)-(3). Here, while Plaintiff's alleged lack of cooperation in discovery, *see* Doc. 40-1, does not excuse Defendants' failure to disclose Dr. Wilson as an expert, it certainly suggests Plaintiff has engaged in similar behavior that could potentially expose him to sanctions as well. The Court, however, declines to issue sanctions, and rather will proceed with adjudication of the matter.

<u>Motion to Strike Warden Turner's Affidavit</u>

Plaintiff filed a motion to strike Warden Turner's affidavit, alleging Defendants failed to disclose him as an expert witness. (Doc. 37). Civil Rule 26(a) and (e) require parties to disclose

---

12. In addition to their opposition to the motion to strike and for sanctions, Defendants request the Court: (1) extend the deadline for submission of expert testimony; (2) permit Defendants to expand the affidavit and report of Dr. Wilson to comply with expert identification and support; and (3) dismiss Plaintiff's medical claims because they are unsupported by expert testimony. (Doc. 40, at 6). The Court declines Defendants first and second requests, and addresses the third within the motion for summary judgment section.

expert witnesses. Defendants did not file an opposition, and therefore have not disputed Warden Turner was an undisclosed expert witness prior the filing of his affidavit, or argue that the failure was substantially justified or is harmless. Therefore, pursuant to Civil Rule 37, Plaintiff's motion to strike is granted and Warden Turner's affidavit (Doc. 27-3, at 1-2), to the extent it offers expert opinions, is hereby stricken from the record. However, the Court allows Warden Turner's statement in paragraph six, which is not expert testimony. *See* Doc. 27-3, at 1 ("Affiant is aware that Plaintiff Shough received medical attention by MTC Medical following the January 2014 use of force incident. The complaints voiced by Mr. Shough are related to force used by Lt. McCurry. The pertinent use of force reports are attached."). The statement authenticates incident reports and other various records attached to the Affidavit and found at Doc. 27-3, at 3-14, which the Court will consider.

Motion to Strike Hearsay Statement

Plaintiff also filed a motion to strike an alleged hearsay statement (Doc. 39), which Defendants opposed (Doc. 44). Specifically, Plaintiff asks the Court to strike a portion of Defendants' motion for summary judgment as inadmissible hearsay. The relevant portion states:

> In an effort to obtain medical fact witness testimony, Plaintiff proceeded with the deposition of the Mansfield Correctional Institution Medical Director on March 14, 2017. That doctor declined to offer any opinion that supports Plaintiff's medical indifference allegations. Plaintiff did not even order the deposition transcript as the testimony refuted Plaintiff's claims.

(Doc. 27, at 16).

Civil Rule 801(c) defines hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Hearsay is generally inadmissible unless an exception applies. First, the Court agrees that Rule 801 is not applicable here because Defendants have not

offered a *statement* made by Dr. Airaldi. The Court agrees with Defendants that "[a]t most, the line is an observation regarding Dr. Airaldi's lack of testimony supporting Plaintiff's claims." (Doc. 44, at 2). Second, to the extent Plaintiff argues the claim is uncorroborated and lacks foundation, Defendants have now filed Dr. Airaldi's deposition transcript. The transcript supports Defendants' claim Dr. Airaldi did not offer an opinion that supported Plaintiff's claims because Dr. Airaldi did not testify as an expert witness. *See* Doc. 45-1, at 66-69. Plaintiff did not move to strike the transcript. Regardless, this issue is not outcome-determinative.

Having addressed each of the pending motions, the undersigned turns to the underlying summary judgment motion.

## MOTION FOR SUMMARY JUDGMENT STANDARD OF REVIEW

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. Further, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to

create a genuine issue of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting that the court "need consider only the cited materials").

**DISCUSSION**

In his Amended Complaint, Plaintiff alleges five counts: (1) inadequate policies, procedures, and training; (2) Eighth Amendment violations; (3) Fourteenth Amendment violations; (4) negligence; (5) punitive damages. (Doc. 5-1, at 1-28). Defendant responds Plaintiff has presented no medical documentation or testimony to support his allegations, and thus the Court should grant the motion for summary judgment. (Doc. 27, at 7). The Court addresses each count in turn, and finds summary judgment is appropriate on all claims.

<u>Counts II & III: Eighth & Fourteenth Amendment Violations</u>

The Court considers the claims in Counts II and III under the Eighth Amendment, rather than the Fourteenth, because it is "'specifically concerned with the unnecessary and wanton infliction of pain in penal institutions'" and therefore "'serves as the primary source of substantive protection to convicted prisoners . . . .'" *Walker v. Norris*, 917 F.2d 1449, 1455 (6th Cir. 1990) (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

Plaintiff alleges prison officials used excessive force during the January 2014 incident, resulting in his injuries, and then showed deliberate indifference to his serious medical needs by failing to provide him appropriate medical care for those injuries. (Doc. 5-1, 1-14; Doc. 38-1).

*Excessive Force*

Post-conviction excessive force claims are properly raised "exclusively under the Eighth Amendment's cruel and unusual punishment clause." *Cornwell v. Dahlberg*, 963 F.2d 912, 915 (6th Cir. 1992). The Eight Amendment protects against punishments that "'involve the unnecessary and wanton infliction of pain,' including inflictions of pain that 'are totally without

10

penological justification.'" *Lockett v. Suardini*, 526 F.3d 866, 875 (6th Cir. 2008) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). However, a "good faith use of physical force may be necessary to maintain prison security and discipline". *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992). Thus in analyzing these claims, courts must determine "whether [the] force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillan*, 503 U.S. 1, 7 (1992) (discussing *Whitley,* 475 U.S. 312). This same standard is applied regardless of the quantum of injury sustained. *Id.* Rather, the extent of the injury suffered may suggest whether the use of force was necessary or a wanton infliction of pain. *Id.*

A claim alleging a violation of the Eighth Amendment has both an objective and a subjective component. *Santiago v. Ringle,* 734 F.3d 585, 590 (6th Cir. 2013). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014). Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Id*. This objective prong is "responsive to 'contemporary standards of decency.'" *Id.* (citing *Hudson*, 503 U.S. at 8). Either prong may be evaluated first, but both must be shown. *Pearson v. Callahan,* 555 U.S. 223, 227 (2009).

In determining whether a defendant had a culpable state of mind, the court may consider "such factors as the need for the application of force, the relationship between the need and the amount of force [ ] used, [and] the extent of the injury inflicted," as well as "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them". *Whitley*, 475 U.S. at 321 (internal citations omitted). "Where a prison security measure is undertaken to resolve a disturbance . . . that indisputably poses significant risks to the safety of inmates and prison staff, we think the question whether the measure taken

inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Id*. at 320-21 (internal citation omitted).

The Court notes that prison officials commonly must make decisions "in haste, under pressure, and frequently without the luxury of a second chance." *Id.* at 320. Therefore, "[t]he issue is … not whether the force was absolutely necessary in hindsight, but 'whether the use of force could plausibly have been thought necessary…'" *Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010) (quoting *Whitley*, 475 U.S. at 321).

Following review, even taking the facts in the light most favorable to Plaintiff, the Court finds a lack of evidentiary support for an excessive force claim. First, any claim against either Officer Skidmore or Officer McCurry for excessive force is unsubstantiated and hereby dismissed. In the Amended Complaint, Plaintiff alleges he was injured after Officer Skidmore "took him to the ground." (Amended Complaint, Doc. 5-1, at 4). There is no evidence in the record to suggest Officer Skidmore was present during the incident. In fact, various reports, including Plaintiff's handwritten notes, indicate Officer McCurry, not Skidmore, brought Plaintiff to the ground. (Doc. 27-3, at 3- 14). Officer McCurry is not a named defendant. While Plaintiff corrects this error in his affidavit (Doc. 35-1, at 1-2), and admits in his brief, Officer Skidmore had "no personal knowledge of the incident", (Doc. 35, at 21), he did not move to amend Complaint to reflect such. Pursuant to Civil Rule 4(m):

> If a defendant is not served within 90 days after the complaint is filed, the court— on motion or on its own after notice to the plaintiff—*must* dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m) (emphasis added).

The time requirements in Rule 4(m) apply to service of unidentified defendants as well. *Garner v. City of Memphis*, 576 F. App'x 460, 463 (6th Cir. 2014). If a plaintiff fails comply with the service rule, the action must be dismissed, unless plaintiff can establish good cause for the failure to meet the deadline. *Habib v. Gen. Motors Corp.,* 15 F.3d 72, 73 (6th Cir. 1994). Here, Plaintiff did not attempt to amend the complaint to add Officer McCurry as a defendant, much less provide good cause for his failure to do so. This is so despite the fact that the incident reports clearly show Officer McCurry, not Skidmore, was involved in this incident. *See* Doc. 27-3, at 3-14; *see also* Doc. 35, at 21 (admitting Officer Skidmore had "no personal knowledge of the incident").

Second, even if Officer McCurry was a named Defendant, there is no evidence in the record to support an excessive force claim against him. Officer McCurry took Plaintiff to the ground after Plaintiff "squared up". Furthermore, Officer McCurry was reacting to a verbal altercation between two inmates, which could have turned physical in an instant. In fact, Plaintiff suggests that altercation may have already turned physical because Plaintiff alleges he was injured either by the intervening officer or by another inmate, (Amended Complaint, Doc. 5-1, at 4), making the situation potentially even more dangerous. Furthermore, immediately before Plaintiff was taken down and injured, he admits he "squared up" to Officer McCurry. (Doc. 38-1, at 2). Officer McCurry's reaction to this seemingly threatening maneuver was to take Plaintiff to the ground, which appears entirely reasonable to ensure safety and preserve order within the facility. Since prison officials must take immediate action to maintain order, they are given "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Hudson,* 503 U.S. at 6 (internal quotation omitted). The Court finds Officer McCurry's actions "could plausibly have

been thought necessary…" in this instance. *Griffin*, 604 F.3d at 954. Because Plaintiff has failed to show the subjective prong, it is not necessary to analyze the objective prong.

### Deliberate Indifference

Plaintiff next asserts that after he was injured, prison staff violated his constitutional rights by showing deliberate indifference to his serious injuries. "[D]eliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). To succeed on such a claim, a plaintiff must show: 1) he had a serious medical need; and 2) a defendant was aware of that need, and acted with deliberate indifference to it. *Id.*

A plaintiff must show the defendants had a "sufficiently culpable state of mind," *Wilson v. Seiter,* 501 U.S. 294, 297 (1991), to deny or purposely delay medical care or intentionally interfere with prescribed medical treatment, *Estelle,* 429 U.S. at 104-05. Objectively, a plaintiff must show "the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County,* 390 F.3d 890, 899 (6th Cir. 2004). However, in the case of "minor maladies or non-obvious complaints of a serious need for medical care," *id. at* 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment". *Napier v. Madison County, Ky.,* 238 F.3d 739, 742 (6th Cir.2001) (internal citation omitted). Subjectively, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary,* 273 F.3d 693, 703 (6th Cir. 2001). Importantly, to support a constitutional claim of deliberate indifference under the Eighth Amendment, a plaintiff must show more than mere negligence. *Farmer v. Brennan,* 511 U.S. 825, 860 (1994); *see also Estelle,* 429 U.S. at 106 ("[A]

complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.").

Here, Plaintiff's deliberate indifference claim is wholly unsupported by the record. Most importantly, contrary to his allegations in the Amended Complaint, and to which he now concedes, he *did* in fact receive medical attention immediately following the incident (Doc. 36-1, at 3, 6) and continuing treatment up until the time he was transferred *id.* at 5, 7, 8-11, 14-15. To the extent Plaintiff argues this care was inadequate, there is no evidence showing the care he received at NCCC resulted in long-term harm because he has not introduced expert testimony to show this is the case. Plaintiff alleges he can show deliberate indifference without expert testimony because his care was "grossly inadequate", citing to *Wood v. Mohr*, 2014 WL 1330640, at *3 (S.D. Ohio)[13] for support. (Doc. 35, at 15). The plaintiff in *Wood*, however, relied on a medical opinion to support his allegation he was denied proper treatment for a hand injury necessary to prevent the loss of use of his arm. *Id.* at *2. The court determined that although plaintiff was referred to a specialist for surgery, his claim should be dismissed because he did not provide any evidence connecting his hand injury to the potential loss of use of his arm. *Id.* at *4. Here, however, Plaintiff has not presented any evidence that different treatment would have prevented long term harm; he only offers evidence he received different treatment at Mansfield. *King v. Alexander*, 574 F. App'x 603, 606 (6th Cir. 2014) (dismissing medical indifference claims where the plaintiff did receive medical treatment, but not the specific type he requested, and there was a lack of "medical expert testimony to establish a causal link between the loss of her little finger and the alleged inadequacy of her treatment.") (citing *Santiago*, 734 F.3d at 591)).

---

13. Report and recommendation adopted by 2014 WL 1909584.

Plaintiff here also relies on *Blackmore v. Kalamazoo County* for the proposition that deliberate indifference can be established without expert testimony that delayed treatment "worsened or deteriorated" the medical condition, where an injury is readily apparent to a lay person. (Doc. 35, at 16) (citing *Blackmore*, 390 F.3d at 899-900). In *Blackmore*, however, the plaintiff not only made subjective pain complaints, but also vomited in the presence of jail staff, and did not receive *any* medical treatment for several days. *Id.* at 896. That is not the case here. The Sixth Circuit has since made clear that the ruling in *Blackmore* is the exception to the general rule requiring medical proof to substantiate an Eighth Amendment medical indifference claim. *Compare Blackmore*, 390 F.3d at 899-900 (allowing medical indifference claim without medical proof where Plaintiff was in obvious distress and did not receive *any* medical treatment "within a reasonable timeframe") with *King*, 574 F. App'x at 606 (granting summary judgment to defendants for a medical indifference claim where the plaintiff received medical treatment and did not offer medical expert testimony to establish a causal link between her injury and the alleged inadequacy of her treatment, and noting that even if it excused the absence of medical expert testimony, her claim still failed because her "sole evidence [was] a self-generated affidavit"), and *Santiago*, 734 F.3d at 591 (dismissing a medical indifference claim where there was no medical expert testimony because when "a claim [is] based on the prison's failure to treat a condition adequately, 'medical proof is necessary to assess whether the delay caused a serious medical injury.'" (citing *Blackmore*, 390 F.3d at 898)).

Because Plaintiff here received immediate medical attention and additional follow-up treatment, the Court finds this case analogous to *King* and *Santiago*, rather than *Blackmore*. Not only did Plaintiff receive immediate medical attention, he has presented no evidence that his injury was so obvious to a lay person. Any injury would have been revealed upon review of the x-ray.

His affidavit that his later treatment shows medical indifference by NCCC staff is unsubstantiated without medical expert testimony showing his treatment at NCCC resulted in long-term harm because he "is not qualified to describe what constitutes medically acceptable practices for [ ] treatment . . . ". *King*, 574 F. App'x at 606.

Thus, with regard to Plaintiff's claims of excessive force and deliberate indifference, there are no genuine issues of material fact and, thus, summary judgment must be granted. *See Graham ex rel. Estate of Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) ("'[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law.'") (quoting *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th Cir. 1976)).

Count I: Inadequate Policies, Procedures, and Training

In Count I, Plaintiff alleges inadequate policies, procedures, and training at NCCC resulted in a deliberate indifference to his serious medical needs, which violated his substantive due process constitutional rights under 42 U.S.C. § 1983. (Doc. 5-1, at 5-7). Defendants respond Plaintiff has failed to show a deliberate indifference at all, much less that it was attributable to some policy, procedure, or training. (Doc. 41, at 8-9).

It is settled that "[o]nly where a[n] [institution]'s failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a [municipal institution] 'policy or custom' that is actionable under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388–89, (1989). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of County Comm'rs v. Brown,* 520 U.S. 397, 410 (1997).

This in turn typically requires proof that the institution was aware of prior unconstitutional actions by its employees and failed to take corrective measures. *Stemler v. City of Florence,* 126 F.3d 856, 865 (6th Cir. 1997). Additionally, a § 1983 plaintiff must prove that the policies and practices directly caused the constitutional violation. *Gray ex rel. Estate of Gray v. City of Detroit,* 399 F.3d 612, 617 (6th Cir. 2005). Moreover, a claim based on a failure to train fails where there is no underlying constitutional violation. *Swain v. Fullenkamp*, 2010 WL 1995609, at *4 (N.D. Ohio).

Here, again, Plaintiff did receive medical attention immediately following the incident. (Doc. 36-1, at 3, 6). Plaintiff's medical treatment for his right shoulder resumed three days later on January 23, 2014, and continued through March 2014, up until the date of his transfer to another facility. (Doc. 36-1, at 2-11, 14-15). As discussed above, Plaintiff has not shown any underlying constitutional violation. Furthermore, he fails to point to a specific policy, procedure, or training that was the origin of his injuries. The record is devoid of any evidence supporting Plaintiff's claim he suffered a constitutional injury, much less that it was the result of a policy, procedure, or training. Thus, Defendants have met their burden of showing an absence of evidence to support a constitutional violation, and summary judgment must be granted. *Celotex*, 477 U.S. at 325.

Count IV: Negligence

To the extent Plaintiff brings a state law negligence claim, that claim fails as well. To prove a negligence claim in Ohio, the plaintiff bears the burden of showing, by a preponderance of the evidence, that a defendant breached a duty owed to him and that the breach proximately caused his injury. *Menifee v. Ohio Welding Prods., Inc*., 472 N.E.2d 707, 710 (1984). In a custodial relationship, a defendant owes a common-law duty a common-law duty of reasonable care and protection. *McCoy v. Engle*, 537 N.E.2d 665, 668-69 (1987). A custodial relationship does not "expand or heighten the duty of ordinary reasonable care." *Woods v. Ohio Dept. of Rehab. & Corr.*,

721 N.E.2d 143, 145 (1998). If a correctional institution becomes aware of a dangerous condition, reasonable care must be taken to prevent injury to an inmate. *Briscoe v. Ohio Dep't of Rehab. & Corr.*, 2003 WL 21512808, at *2 (Ohio Ct. App.). "Where one inmate attacks another inmate, actionable negligence arises only when there was adequate notice of an impending attack." *Lucero v. Ohio Dep't of Rehab. & Corr.*, 2011 WL 6171366, at *5 (Ohio Ct. App.). A Plaintiff must show the defendant had actual or constructive notice of an impending attack. *Id.* Importantly, the institution "is not an insurer of inmate safety and owes the duty of ordinary care only to inmates who are foreseeably at risk." *Woods*, 721 N.E.2d at 145.

Here, Plaintiff has not demonstrated officials at NCCC had advance notice of an impending attack. The evidence in the record, even in the light most favorable to Plaintiff, suggests Officer McCurry responded to a spontaneous altercation between two inmates and reasonably responded to maintain order. There is no evidence Defendants breached their duty to Plaintiff.

*Failure to Protect*

Within his state law negligence claim, Plaintiff asserts jail staff failed to protect him from harm inflicted by other inmates—an alleged violation of the Eighth Amendment. (Doc. 5-1, at 10-11). Prison officials have a duty under the Eighth Amendment to protect inmates from attacks by fellow prisoners. *Farmer,* 511 U.S. at 833-34. A prisoner must demonstrate that he was incarcerated under conditions imposing a substantial risk of serious harm, and that prison officials acted with "deliberate indifference" to his health or safety. *Id.* at 834, 837; *see also Gibson v. Foltz,* 963 F.2d 851, 853 (6th Cir.1992).

Plaintiff's allegation suggests it is possible his shoulder injury was actually caused by another inmate rather than a correctional officer. First, this contradicts Plaintiff's statements that the correctional officer broke up a *verbal* altercation between him and another inmate, Doc. 38-1,

at 1-2, suggesting instead it was a physical altercation in which Officer McCurry intervened, which would only lend credence to the necessity of the contemporaneous force used by Officer McCurry to keep order. Second, the allegation Plaintiff was injured by another inmate directly contradicts Plaintiff's excessive force allegations against Officer McCurry. Third, even so, Plaintiff has failed to show prison officials violated their duty to protect inmates from each other because there is no evidence Defendants knew of an impending assault.

Plaintiff offers no evidence of conditions imposing a risk of substantial risk of serious harm or that prison officials acted with deliberate indifference. To the contrary, the evidence suggests Officer McCurry responded immediately to an altercation, separated the inmates involved, and removed Plaintiff from the area. His actions ensured the safety of both inmates and prison officials.

Count V: Punitive Damages

As Defendants correctly point out (Doc. 27, at 21), punitive damages is not an independent claim, but rather available when another claim is successful on the merits. *See Beair v. Ohio Dep't of Rehab. & Corr.*, 156 F. Supp.3d 898, 907 (N.D. Ohio 2016) (dismissing the petitioner's claim for punitive damages because there was "no such freestanding cause of action under Ohio or federal law."). Because the Court finds no surviving claims, an analysis of damages is unnecessary.

CONCLUSION

The Court therefore grants Plaintiff's unopposed Motion to Supplement the Record (Doc. 38); grants, in part, the unopposed Motion to Strike Warden Turner's Affidavit (Doc. 37); and grants the Motion to Strike Dr. Wilson's Affidavit (Doc. 33); and denies Plaintiff's Motion to Strike a hearsay statement (Doc. 39). Defendants have demonstrated an absence of evidence to support Plaintiff's case. The Court finds there are no genuine issues of material fact and Defendants are entitled to summary judgment as a matter of law. Defendants' Motion for Summary Judgment

(Doc. 27) is granted and the case is dismissed with prejudice. The Court, however, declines

Defendants' request to award costs and attorney fees for filing a frivolous and vexatious action.

*See* Doc. 27, at 7.

IT IS SO ORDERED.


 s/James R. Knepp II
United States Magistrate Judge